```
 1                IN THE UNITED STATES DISTRICT COURT

 2               FOR THE SOUTHERN DISTRICT OF TEXAS

 3                        HOUSTON DIVISION

 4  UNITED STATES OF AMERICA    §   CASE NO. 4:17-CR-00567-1
                                §   HOUSTON, TEXAS
 5  VERSUS                      §   FRIDAY,
                                §   OCTOBER 6, 2017
 6  RONALD DONELL BROWN         §   10:09 A.M. TO 10:20 A.M.

 7            ARRAIGNMENT AND DETENTION HEARING

 8         BEFORE THE HONORABLE NANCY K. JOHNSON
                UNITED STATES MAGISTRATE JUDGE
 9

10

11     APPEARANCES:                  SEE NEXT PAGE
       COURT CLERKS:                 CAROL FELCHAK
12                                   SHANNON JONES
       COURT RECORDER:               LINHTHU DO
13

14
```

**THIS TRANSCRIPT HAS BEEN FURNISHED AT PUBLIC EXPENSE UNDER THE CRIMINAL JUSTICE ACT AND MAY BE USED ONLY AS AUTHORIZED BY COURT ORDER.   UNAUTHORIZED REPRODUCTION WILL RESULT IN AN ASSESSMENT AGAINST COUNSEL FOR THE COST OF AN ORIGINAL AND ONE COPY AT THE OFFICIAL RATE.   General Order 94-15, United States Court, Southern District of Texas.**

```
                    TRANSCRIPTION SERVICE BY:

              JUDICIAL TRANSCRIBERS OF TEXAS, LLC
                    935 Eldridge Road, #144
                     Sugar Land, TX 77478
                        281-277-5325
                  www.judicialtranscribers.com


      Proceedings recorded by electronic sound recording;
         transcript produced by transcription service.



                JUDICIAL TRANSCRIBERS OF TEXAS, LLC
```

```
 1                       APPEARANCES:

 2

 3  FOR THE PLAINTIFF:        US ATTORNEY'S OFFICE
                              Steven Donald Mellin, Esq.
 4                            1000 Louisiana Street
                              Suite 2300
 5                            Houston, TX 77002
                              713-567-9000
 6

 7

 8  FOR THE DEFENDANT:        FAZEL LAW
                              Ali R. Fazel, Esq.
 9                            601 Sawyer Street
                              Suite 750
10                            Houston, TX 77007
                              713-526-6020
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1         HOUSTON, TEXAS; FRIDAY, OCTOBER 6, 2017; 10:09 A.M.
 2             THE COURT:  All right, in United States versus
 3  Ronald Brown for Arraignment and Detention?
 4             MR. MELLIN:  Good morning, Your Honor.
 5             Steve Mellin for the United States
 6             MR. FAZEL:  Good morning, Your Honor.
 7             Ali Fazel for Mr. Brown.
 8             THE COURT:  All right, have you been retained?
 9             MR. FAZEL:  I have.
10             THE COURT:  All right.  Mr. Brown, come on up.
11             Let's do your Arraignment, first.  Sir, that is
12  when you are asked to enter a formal plea of guilty or not
13  guilty to the charge.
14             Have you had enough time to review the Indictment
15  with your lawyer and you are you ready to enter a formal
16  plea?
17             DEFENDANT BROWN:  Yes, ma'am.
18             THE COURT:  Mr. Fazel, do you wish to waive formal
19  reading?
20             MR. FAZEL:  We would, Your Honor.
21             THE COURT:  Then, sir, how do you plead to the
22  charge?  Guilty or not guilty.
23             DEFENDANT BROWN:  Not guilty, Your Honor.
24             THE COURT:  A not guilty plea will be entered.
25             Judge Lake has set your trial for November 13th at
```

```
 1  1:00 p.m.
 2              THE CLERK:  Why don't you sign that?
 3              THE COURT:  Well, I can sign this one, but it's
 4  not on the form.  I mean, it's not on the --
 5              THE CLERK:  Right, I need a hard copy of it.  I'll
 6  upload it in a few minutes.
 7              THE COURT:  All right.
 8              MR. FAZEL:  Your Honor, if I may address the
 9  Court?  In a number of these cases, the charges pending
10  against Mr. Brown are the death penalty.  My inquiry of the
11  Court, frankly, is to have the Government put them on the
12  record if they have a position of whether they're seeking
13  the death penalty or not on Mr. Brown, or if their
14  contemplating such, I'll like them to put that on the
15  record.
16              THE COURT:  It might be early.
17          Mr. Mellin?
18              MR. MELLIN:  It's a bit early for that, Your
19  Honor, but that's a determination that the Attorney General
20  will need to make, not me or this Office.
21              THE COURT:  All right.  So, it's in the seek-no
22  seek process?
23              MR. MELLIN:  That's correct, Your Honor.
24              THE COURT:  All right.
25              MR. FAZEL:  You asked it better than I did.
```

1           Thank you.
2           THE COURT:  So, no one knows for sure right now
3  but --
4           MR. MELLIN:  That's right.
5           THE COURT:  And that process typically takes a
6  while.
7           MR. MELLIN:  It does, Your Honor.
8           MR. FAZEL:  Your Honor, there's one other issue.
9  And I apologize to the Court; I know you're busy.
10          Mr. Brown is in custody at the FDC.  There's a
11 detention hearing set.  He is in the SHU, Special Housing
12 Unit.  I don't know why and I'm inquiring of the Marshals if
13 they know why, and they don't have an answer to that.
14          So, I'm wondering if we can get the Government on
15 record whether they sought putting him in SHU.  The reason I
16 ask that is twofold.  It does make it a little bit more
17 complicated for attorney-client meetings.  And if they have
18 sought for that, I'd like that to be on the Record.
19 Perhaps, we can discuss that later, but I'll like to know
20 that now before the detention hearing.
21          THE COURT:  I don't know understand why you need
22 to know that.  Clearly, these charges are extremely
23 troubling.
24          MR. FAZEL:  I understand that but there have been
25 many, many people that have been charged with similar

1  charges, Your Honor, even people that they've sought death
2  penalty.  They are not necessarily committed to the Special
3  Housing Unit.  And I'm not trying to make things complicated
4  nor am I trying to stir up anything.  I'm just simply
5  inquiring.  Sometimes, they're in the Special Housing Unit
6  because the BOP needs them to be in the Special Housing
7  Unit.  Sometimes, they're in the Special Housing Unit
8  because the Government sought them to be.
9        THE COURT:  Okay.  So, let's assume that the
10 Government did that and I don't know; what's the point?
11       MR. FAZEL:  The point is if the Government sought
12 them to do that, then I think, at that point, there might be
13 a reason for me to approach Judge Lake on a motion to see if
14 I can have a hearing on that.  If they didn't seek it, then
15 there's no need for me to go further on that.  I just need
16 some clarification on the Record as to that.
17       THE COURT:  Well, if you're concerned about his
18 housing, file a motion with Judge Lake.
19       MR. FAZEL:  Yes, ma'am.
20       THE COURT:  You know, I talked to your client
21 about this the other day.  I have no control over his
22 housing.
23       Mr. Brown, you are facing extremely troubling
24 charges, and I don't know why you're in a Special Housing
25 Unit, but you're charges may be the reason.  Certainly,

1  they're out of the ordinary.  The Government is looking
2  whether or not to seek the death penalty.  That is not the
3  usual case or the usual inmate.
4          So, file a motion and see what happens.
5          MR. FAZEL:  Yes, ma'am.
6          THE COURT:  All right.  So, as to the issue of
7  detention, your client is, it looks like he's -- is he on
8  parole?
9          MR. FAZEL:  He is.
10         THE COURT:  You need a hearing?
11         MR. FAZEL:  I'd like one.
12         THE COURT:  What would be the issue if he owes the
13 State of Texas time?
14         MR. FAZEL:  He does owe the State of Texas.
15 Everybody does it a little different, Your Honor.  I'm not
16 sure how you do it.  Some judges say there's still a liberty
17 interest, others say there's not.  Frankly, I've never had
18 this issue with as many times I've been in front of you.
19 So, I don't now the answer to that.
20         THE COURT:  Well, I guess, the point is if I
21 assume your client is bondable and he goes back into State
22 custody, then he's not getting credit time served in State
23 custody.
24         MR. FAZEL:  But if his bond's set and he doesn't
25 (indiscernible).

1          THE COURT: Then he will be -- you know, and
2  typically, what happens as I understand it is he will serve
3  out whatever term he owes the State of Texas, and then --
4          MR. FAZEL: Yes.
5          THE COURT: -- you know, he'll do consecutive
6  time.
7          MR. FAZEL: Right, but if there's a bond hearing
8  where you determine whether there's a bond set or not and
9  the Defendant does not make the bond, then certainly, that's
10 not an issue. Then I can then focus on the parole issue.
11 That's why I'm saying there's some argument that there is a
12 liberty issue, others disagree. I, frankly, don't know
13 where you stand.
14         THE COURT: Well, this is a rebuttable
15 presumption.
16         MR. FAZEL: It is.
17         THE COURT: Do you have evidence to rebut the
18 presumption?
19         MR. FAZEL: I do not. I can be very frank with
20 you.
21         THE COURT: Then what would the Court be
22 considering?
23         MR. FAZEL: Testimony of the agent.
24         THE COURT: Of the agent about the conspiracy to
25 commit murder for hire, kidnapping, carrying and brandishing

1  a firearm?

2         MR. FAZEL: During a conspiracy, correct.

3         THE COURT: And how is that bondable conduct?

4         MR. FAZEL: I get it, I get it. That's why I'm
5  asking you a question.

6         THE COURT: I don't see any point in -- his parole
7  date, the parole expires 2032.

8         MR. FAZEL: Correct.

9      (Pause in proceedings.)

10        THE COURT: Is there any proffer you'd want me to
11 make that you think the agent would admit to that would be a
12 factor on his behalf?

13        MR. FAZEL: I wouldn't know until the agent
14 testifies. I can just simply tell you for frankness that I
15 do not have any evidence. None that I can think of for the
16 Court to offer up regarding his bond.

17        THE COURT: All right.

18        MR. MELLIN: Your Honor, may I just -- we would
19 rely on the Indictment that has already been returned --

20        THE COURT: Uh-huh.

21        MR. MELLIN: -- to show that the Defendant is a
22 danger to the community and a risk of flight.

23        If I may also proffer an opinion from the Court of
24 Appeals for the 1st District of Texas to the Court, which
25 addressed the other angle, which is that he is not a risk of

1  flight.  And I think I think the Court of Appeals did a very
2  good job of discussing the Defendant's prior conduct in 1997
3  and 2002, which predates this Indictment.
4              So, in addition to the acts that are charged in
5  the Indictment, in 1997 the Defendant attempted to run over
6  a police officer while getting away from a drug deal.  In
7  2002, he attempted to kill two police officers when he
8  picked up a gun and tried to shoot them at point blank
9  range.  If I could just proffer that to the Court in
10 addition.
11             THE COURT:  Yeah, where is that?
12             Have you seen that, Mr. Fazel?
13             MR. FAZEL:  He handed that to me this morning.  I
14 believe the latter one was dismissed.  The latter case was
15 dismissed
16             MR. MELLIN:  Actually, what happened, Your Honor,
17 the cases were merged and because the Defendant was found
18 guilty of the 2002 offense and given a 30-year sentence, the
19 1997 case was dismissed.  If I can draw the Court's
20 attention to the two full paragraphs on the second page
21 which talks about the background.  The two paragraphs talk
22 about the '97 and 2002 events.
23        (Pause in proceedings.)
24             THE COURT:  All right.  So, I've got a rebuttable
25 presumption of detention based on risk of flight and danger

1  to the community based on the Indictment.  I've got the
2  undisputed fact that Mr. Brown is on parole until 2032.
3  Therefore, he allegedly committed the present acts while on
4  parole.  I've got an opinion that indicates that he
5  attempted to kill police officers by running over them back
6  in 2002 and --
7            MR. FAZEL:  Your Honor, and again, I understand.
8  I just want you to understand that that is a case -- that's
9  the aggravated assault case that he got 30 years for.
10 That's what that is describing.
11           THE COURT:  Okay.
12           MR. FAZEL:  I just wanted to point that out.
13           THE COURT:  It's pretty violent.
14           All right, I don't see any need to have a hearing.
15 I don't see any disputed facts that we would be talking
16 about --
17           MR. FAZEL:  I understand.
18           THE COURT:  -- that go to detention.
19           All right.  So, no hearing.
20           MR. FAZEL:  Yes, ma'am.
21           THE COURT:  All right, is there anything else that
22 we need to discuss?
23           MR. FAZEL:  No.
24           THE COURT:  All right, then you may be excused.
25           MR. FAZEL:  Thank you.

1        MR. MELLIN:  Thank you.

2     (Proceedings adjourned at 10:20 a.m.)

3                    *  *  *  *  *

4         *I certify that the foregoing is a correct*

5  *transcript to the best of my ability produced from the*

6  *electronic sound recording of the proceedings in the above-*

7  *entitled matter.*

8  */S/ MARY D. HENRY*

9  *CERTIFIED BY THE AMERICAN ASSOCIATION OF*

10 *ELECTRONIC REPORTERS AND TRANSCRIBERS, CET**337*

11 *JUDICIAL TRANSCRIBERS OF TEXAS, LLC*

12 *JTT TRANSCRIPT #68519*

13 *DATE FILED:  MAY 16, 2024*

14

15

16

17

18

19

20

21

22

23

24

25